UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR17-0277-JCC |
| Plaintiff, | ORDER |
| v. | |
| MICHAEL JAMES COOPER, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion to suppress evidence regarding count 2 of the indictment (Dkt. No. 21). Having thoroughly considered the parties' briefing and the relevant record, the Court finds that neither an evidentiary hearing nor oral argument would aid it in reaching a ruling[1] and hereby DENIES the motion for the reasons explained herein.

## I.     BACKGROUND

Defendant Michael Cooper ("Cooper") is charged by indictment with three counts of possession of a controlled substance with intent to distribute. (Dkt. No. 1.) Each count arises from a different contact Cooper had with law enforcement in 2017. (*See generally id*.) In this

---

[1] The Court concludes that an evidentiary hearing is particularly unnecessary in this case because the relevant incident was audio and video recorded on the police officers' in-dash cameras. (Dkt. Nos. 32, 33, 36-1.) Both parties have filed copies of these recordings, which the Court has reviewed and cites to in this order.

motion, Cooper asks the Court to suppress evidence that relates only to the facts alleged in count 2 of the indictment.[2]

On the morning of May 10, 2017, Renton Police Officers Randy Jensen and Matthew Nugent were dispatched to conduct a welfare check outside of a 7-11 convenience store. (Dkt No. 31-7 at 13.) Someone had called 911 to report that a man was either sleeping or passed out in the driver's seat of a Ford Edge that had been parked in front of the 7-11 for at least two hours. (*Id*.) The Officers also learned that the Ford had been reported stolen six days earlier. (*Id*.)

When the Officers arrived, they found Cooper, shirtless, asleep behind the wheel of the car. (*Id*.) Because the car was reported stolen, the Officers used their PA system to direct Cooper to get out with his hands up. (*Id*.) Officer Jensen detained Cooper without incident, while Officer Nugent confirmed with dispatch that the reporting police agency still believed the car to be stolen. (*Id*. at 13, 18.) The car was confirmed stolen as part of a residential burglary the week before. (*Id*. at 18.) Officer Jensen arrested Cooper on suspicion of possession of a stolen vehicle. (*Id*. at 13.)

The Officers also learned through dispatch that the car's registered owners had recently passed away, and the current owner was the executor of their estate, Joan Matheson. (*Id*.) Officer Jensen called Mattheson to see if she would consent to a search of the car and whether she wanted the car impounded. (Dkt. No. 33[3] at 31:20.) Matheson explained that she was the court-appointed executor of the estate and was responsible for the car. (*Id*. at 32:50.) Mattheson told Officer Jensen that she had gone to the owners' residence the week before and discovered that the car, along with its keys and several other items[4], had been stolen from the house. (*Id*. at 33:10–34:20.) Matheson subsequently reported the burglary and stolen car to the local police

[2] Cooper has filed a separate motion to suppress dealing with count 1 (Dkt. No. 24).

[3] Unless otherwise noted, "Dkt. No. 33" refers to the dash camera recording from Officer Jensen's car.

[4] Mattheson told Officer Jensen that cash, coins, a T.V., a "Chinese box," and the car keys were taken from the house during the burglary. (Dkt. No. 33 at 33:45–34:20.)

1  department. (*Id*.) Mattheson gave Officer Jensen consent to search the vehicle. (*Id*. at 38:35–

2  39:30.) (Mattheson: "I have no reason to restrict you at all from looking in the car. Any part of

3  the car is fine.")

4      After Officer Jensen finished speaking with Mattheson, Cooper told him that he was not

5  aware the car was stolen and that he had bought the car off of Craigslist. (*Id*. at 26:10–26:30.)

6  Cooper also told Officer Jensen he had the title at his house. (*Id*. at 44:15–44:25.) Officer Jensen

7  asked Cooper to identify what items in the car were his, so that the police could verify that

8  information with the Mattheson. (*Id*. at 57:00–57:30.) Officer Jensen asked Cooper if a shirt,

9  jacket, and backpack on the front seat of the car were his. (*Id*. at 58:10–58:40.) Cooper initially

10  indicated that the shirt and jacket were his but that the backpack was not. (*Id*. at 58:50–59:10).

11  Moments later, Cooper stated that he was the owner of the car and "everything inside is mine."

12  (*Id*.)

13      Officer Jensen removed two shirts and a jacket from inside the car and placed them on

14  the hood. (*Id*. at 104:00.) He proceeded to search the pockets of the jacket, and found a wallet

15  with several thousand dollars and a plastic baggie of what was later confirmed to be

16  methamphetamine. (Dkt. No. 37-1 at 14.) Officer Jensen subsequently searched the backpack

17  and found two plastic baggies of what was later confirmed to be powder heroin. (*Id*. at 15.)

18  Cooper was arrested for possession of a controlled substance. (*Id*.)

19      In this motion, Cooper asks the Court to suppress all of the evidence obtained by Officer

20  Jensen during his search of the jacket and backpack. (Dkt. No. 21 at 13.)

21  **II.    DISCUSSION**

22      Cooper's primary argument is that Officer Jensen's search of his jacket exceeded the

23  scope of his consent. (*Id*. at 1.) Additionally, he asserts that the search of his backpack was not a

24  lawful search incident to arrest, and even if it were, "was fruit of the poisonous tree" based on

25  the illegal search of his jacket. (*Id*.) The Government counters that Officer Jensen's search of the

26  jacket and backpack were lawful for several reasons. First, Mattheson confirmed the car was

recently stolen as part of a burglary, which provided the police with probable cause to search the car for evidence of the reported crime. Second, Mattheson, as the lawful owner of the car, gave Officer Jensen consent for the search. Third, Cooper impliedly consented to the search of his jacket. Finally, the officers would have inevitably discovered the drugs when they conducted a search of the car before returning it to Mattheson. (Dkt. No. 31 at 11–12.) The Court need not reach the issue of Cooper's consent to search because Officer Jensen had probable cause to believe the car contained evidence of a crime.

"[P]olice may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Under the automobile exception to the Fourth Amendment, if police have probable cause to believe a vehicle contains evidence of criminal activity, they are authorized to search any area of the vehicle in which the evidence might be found. *United States v. Ross*, 456 U.S. 798, 820–21 (1982). The scope of the exception has been applied broadly and allows police to search "all containers within a car, without qualification as to ownership." *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (citing *California v. Acevedo*, 500 U.S. 565, 572 (1991)). "When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Id.* at 302. There is probable cause for a search where, in light of the totality of the circumstances, there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Pinela–Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001) (citation omitted).

In this case, Officer Jensen had probable cause to believe the car Cooper was in, and the items inside it, contained evidence of a crime. Officer Jensen confirmed with Mattheson that the car had been stolen less than a week before. (Dkt. No. 33 at 33:10–34:20.) Mattheson told Officer Jensen that the car and several other items had been stolen as part of a residential burglary. (*Id.*) Mattheson said that the burglars had taken cash, coins, a T.V., a "Chinese box,"

and the car keys. (*Id*. at 33:45–34:20.) Cooper could not provide any documentation that he owned or had recently purchased the car. (Dkt. No. 37-1 at 13–14.) When Officer Jensen asked Cooper which of the items in the car were his, Cooper gave equivocal responses and initially said the backpack was not his. (*Id*. at 58:10–59:10.) Based on this information, Officer Jensen had probable cause to search the entire car for evidence of the car theft and burglary. This included the jacket and backpack which could have contained some of the items that were reported stolen.[5]

Cooper concedes that "Renton P.D. had probable cause that the car was stolen," but since Officer Jensen had already identified Cooper as the driver and obtained the car keys, there was no additional evidence to collect. (Dkt. No. 36 at 6.) The Court disagrees. First, since the car was stolen as part of a residential burglary, evidence of the latter would necessarily be evidence of the former. Second, Cooper seems to gloss over the fact that both his jacket and backpack— located in the car at the time of arrest—could have contained evidence of the recent burglary. Cooper argues that his jacket and backpack "could not have concealed a flatscreen TV."[6] (*Id*. at 3.) But as the Court has already noted, Cooper's jacket and backpack could have contained the other items that Mattheson reported stolen—cash, coins, or an ornamental box.[7] They could have also contained other kinds of evidence related to the theft; for example, a pry-bar or the keychain that the car keys were originally on.

Cooper also argues that Officer Jensen's stated reasons for searching his jacket and

---

[5] Indeed, Cooper's wallet, found inside his jacket pocket, contained thousands of dollars. (Dkt. No. 37-1 at 15.)

[6] Cooper misstates the record when he says "the only item reported missing contemporaneously with the car was a flatscreen television." (Dkt. No. 36 at 2.) As the Court already noted, Mattheson told Officer Jensen about several items that were stolen. (Dkt. No. 3 at 33:45–34:20.)

[7] It is unclear from the record how large the "Chinese box" was.

backpack were not to collect evidence of the burglary.[8] (Dkt. No. 36 at 2) ("Based on the information they learned, [the Officers] decided not to investigate the burglary and instead narrowed their investigation only to the stolen car.") A police officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Officer Jensen's reasons for searching Cooper's jacket and backpack are irrelevant to the Court's analysis of whether his search was objectively reasonable. Similarly, it does not matter that Officer Jensen had conferred with a detective and decided to release Cooper because he claimed to have purchased the car. (Id. 54:00–57:00.) Given the information provided by Mattheson regarding the stolen items, the relatively short amount of time since the burglary, and Cooper's contradictory statements regarding the items in the car, there was a fair probability that the jacket and backpack contained evidence of a crime. Under the totality of the circumstances, the Court finds that Officer Jensen's search of Cooper's jacket and backpack was supported by probable cause.

## II. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress (Dkt. No. 21) is DENIED.

DATED this 1st day of May 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[8] In fact, Officer Jensen wrote in his report: "My reasoning for searching the clothing items prior to releasing them was, one, for my safety, but second, to make sure that there were no items inside of the clothing and/or pockets of the clothing that could be readily identified as the victim's." (Dkt. No. 31-7 at 14.)